UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

GWENDOLYN MEHARG,

    **Plaintiff,**

v.                                                          **CASE NO.: 4:22cv51**

YORK OPERATIONS, LLC
d/b/a Harmony on the Peninsula

    **Defendant.**

## COMPLAINT

COMES NOW the Plaintiff, Gwendolyn Meharg (hereinafter "Plaintiff"), by counsel, and files this Complaint against York Operations, LLC d/b/a Harmony on the Peninsula (hereinafter "Defendant") under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq* (hereinafter "FLSA") and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA"), and states and alleges as follows:

### I.    Introduction

Plaintiff was at all times a non-exempt employee of Defendant. She took over the work previously done by two employees. She worked every day of the week, and an average of at least 60 hours per week. Plaintiff was misclassified as an exempt employee and is entitled to a substantial amount of overtime compensation.

### II.    Jurisdiction and Venue

1. Jurisdiction to bring this action on behalf of Plaintiff under the FLSA is vested in this Court by 28 U.S.C. § 1331.

2. Defendant's primary place of business is located in Yorktown, Virginia. Venue is proper in this district under 28 U.S.C. § 1391.

### III. Plaintiff

3. Plaintiff is an individual who resides in Yorktown, Virginia.

4. Plaintiff commenced work at Defendant as a Certified Nurse's Assistant at a rate of $13.00 per hour on September 29, 2019.

5. On April 26, 2020 Plaintiff received a raise to $18.00 per hour and began a job in the sales and marketing office of Defendant.

6. Plaintiff received another raise to $24.00 per hour effective October 11, 2020 along with the title of Director of Sales and Marketing at Defendant.

7. Defendant discharged Plaintiff effective February 28, 2022.

### IV. Defendant

8. Defendant is a Limited Liability Company with its principal office located in Roanoke, Virginia.

9. Defendant is doing business as Harmony on the Peninsula located at 2540 Victory Boulevard, Yorktown, VA 23693.

10. Defendant operates nursing homes and assisted living facilities.

11. At all material times Defendant was the "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(b).

12. Defendant is an enterprise that has employees who are engaged in interstate commerce by its use of long distance telephone lines, credit cards from out of state, long distance fax lines, the procurement of supplies from out of state,

and the receipt of payments from out of state insurance companies.   29 U.S.C. § 203(s)(1)(A)(i); 29 C.F.R. § 776, *et seq*.

13.     Defendant does an annual volume of business well in excess of $500,000.00.  29 U.S.C. § 203(s)(1)(A)(ii).

14.     At all times relevant hereto, Defendant was Plaintiff's employer within the meaning of 29 U.S.C. § 207(a)(1) and VOWA.

## V.     FLSA Claim for Unpaid Overtime

15.     Plaintiff restates the above allegations as if set forth at length herein.

16.     Although Plaintiff's title effective October 11, 2020 was "Director of Sales and Marketing" she was hardly a "Director."

17.     Defendant did not permit Plaintiff to exercise discretion and independent judgment regarding matters of significance at Defendant.

18.     Plaintiff had no authority to commit Defendants to any matters with a significant financial impact, and she did not attempt to obligate the company financially.

19.     Defendant required no particular education for Plaintiff's position. She had an Associate's Degree when she received the "Director" title.

20.     Plaintiff had nothing to do with the management of Defendant or its general business operations.

21.     Each day Plaintiff met with prospective residents and their families, first via e-mails and calls and then in person.

22.     Plaintiff conducted tours of the premises and reported any needs for unoccupied apartments to maintenance to her superiors.

23. Plaintiff worked Monday through Friday from 8:00am to 7:00pm each day, or a total of 55 hours.

24. Plaintiff took after hours calls from referrals and she worked a minimum of six hours on Saturday and Sunday.

25. Plaintiff was not able to negotiate the apartment rent. She was directed to quote a monthly rent $250.00 more than the rent that was sought by Defendant, and then permitted to negotiate to the extent of the extra $250.00 per month.

26. Discounts more than that $250.00 needed the approval of her superiors.

27. The directors for and with whom Plaintiff worked, and the other employees at Defendant, knew that Plaintiff was regularly working late and working on the weekends.

28. Plaintiff had to do so because she had to do the work of the two people she replaced in the department. And she did!

29. During the period April 26, 2020 through October 10, 2020, Plaintiff's hourly rate was $18.00 yielding an overtime rate of $27.00 an hour.

30. During that period Plaintiff worked at least 20 hours of weekly overtime which amounts to $12,960.00 (20 hours times $27.00 per hour times 24 weeks), and after doubling totals $25,920.00.

31. Effective October 11, 2020 Defendant increased Plaintiff's pay to $24.00 per hour which yields an overtime rate of $36.00 per hour.

32. During that period Plaintiff worked at least 20 hours of weekly overtime which amounts to $51,840.00 (20 hours times $36.00 per hours times 72 weeks), and after doubling totals $103,680.00.

33. Plaintiff's total FLSA claim totals at least $129,600.00.

34. Plaintiff followed a set script provided by Defendant when she met with prospective residents and their families.

35. Defendant provided Plaintiff with a list of leads and their contact information.

36. Defendant controlled all local advertising (marketing).

37. Plaintiff did not locate, research or qualify prospects.

38. Plaintiff met with the people to whom she was referred.

39. Plaintiff used the same presentation for each of the leads with whom she met.

40. If prospective residents or their families had questions, Plaintiff referred them to the appropriate Director at the facility.

41. For example, questions about diets were referred by Plaintiff to the Dining Services Director.

42. Questions about level of care were referred to the Nursing Director, and questions about activities were referred to the Life Enrichment Director.

43. Even if Plaintiff could or wanted to answer a question about level of care, she was not licensed, and as such Defendant prohibited her from responding.

44. Plaintiff's superiors provided her with the cost of an apartment and the Director of Nursing, after assessing the potential resident, would provide Plaintiff with the cost of care.

45. All Plaintiff could do was provide the cost of the level of care on a piece of paper, or a calendar of potential activities, as opposed to assessing what was appropriate care for the resident, or assigning the customer to activities.

46. Indeed, Plaintiff's script not only told her what to say, but what order in which to say it, which prevented Plaintiff from customizing her presentation.

47. Plaintiff learned to anticipate typical inquiries, and she discussed her planned responses with her supervisor and other Directors in advance.

48. Plaintiff's job was repetitive and routine, but she had plenty of referrals, so she had to work long and hard just to keep up with demand.

49. Plaintiff periodically complained to her supervisors including the Executive Director about the long hours she was working and her resulting low pay.

50. Defendant was legally obligated to keep complete time and payment records for its employees for at least two, and possibly three years, depending on the nature of the work performed by the employee. Defendant, upon information and belief, failed to keep accurate records of the hours worked by Plaintiff. 29 U.S.C. § 211(c); 29 C.F.R. § 516.

51. Defendant was required to pay Plaintiff a rate of not less than one and one half times her regular rate after 40 hours of work in a week.  29 U.S.C. § 207; 29 C.F.R. §§ 548 and 778.

52. Defendant had an obligation under both the FLSA and VOWA to make proper inquiry into their FLSA and VOWA compliance obligations.

53. Defendant reviewed written materials, such as professional periodicals, government memoranda, Department of Labor, Wage and Hour Division guides, and participated in continuing education that informed it about its responsibilities under the FLSA, but it ignored that education.

54. The unpaid overtime due Plaintiff should be doubled by the Court because the Defendant lacked a reasonable and good faith belief that its pay practices complied with the FLSA.

55. Liquidated damages can be denied by a court only if Defendant shows it acted with good faith with reasonable grounds to believe it was not violating the FLSA. 29 U.S.C. § 260.

56. The foregoing also demonstrates that the Defendant committed knowing and willful violations of the FLSA, and accordingly this Court should accept claims reaching back within three years of the filing of this Complaint, and triple damages under VOWA when it applies (July 1, 2021 through February 28, 2022).

### VII. State Law Claim for Defendant's Violations of VOWA

57. Plaintiff restates the above allegations as if set forth at length herein.

58. Effective July 1, 2021 Virginia passed the Virginia Overtime Wage Act (VOWA).

59. Under VOWA all overtime wage violations are subject to double damages, plus pre-judgment interest of 8% per year.

60. There is no "good faith" defense like that available under the FLSA.

61. Also, VOWA provides for treble damages for knowing violations.

62. The period July 1, 2021 through February 28, 2022 (or 35 weeks) is subject to VOWA, and Plaintiff seeks double the amount of her unpaid overtime (if that amount is not awarded under the FLSA).

63. That is, she seeks liquidated damages under VOWA in the alternative to her FLSA claim, but not in addition thereto.

64. Plaintiff also seeks triple damages under VOWA for the 35 weeks she worked at Defendant between July 1, 2021 and February 28, 2022.

65. If the FLSA damages plus liquidated damages are superseded by VOWA triple damages, this results in a deduction of $48,960.00 (35 weeks times 20 hours times $36.00 per hour equals $24,400.00 doubled to $48,960.00) and an increase of the substituted triple damages totaling $75,600.00 (35 weeks times $36.00 per hour times 20 hours equals $25,200.00 times three) for a net increase of $26,640.00.

WHEREFORE, Plaintiff moves the Court for judgment against the Defendant for all unpaid overtime compensation found by the Court to be due under the FLSA; for the period of three years prior to the filing of this Complaint; for an award of double, liquidated damages in the amount of the unpaid overtime compensation due, on the grounds that Defendant had no good faith, reasonable belief its actions complied with the FLSA under 29 U.S.C. § 216(b); for additional wages and liquidated damages, if any, which are revealed during the discovery process in this lawsuit; for double damages and triple damages under VOWA when that statute applies; for interest from the date of the failure to pay each installment of the

compensation; for the costs of this action, including expert witness fees, if any; for reasonable attorney's fees under the FLSA and VOWA; and for such further relief as the Court deems appropriate.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

**GWENDOLYN MEHARG,**

By: /s/ Christopher Colt North
Of Counsel

Christopher Colt North
VSB#16955
The Consumer & Employee Rights Law Firm, P.C.
5629 George Washington Memorial Hwy, Suite D
Yorktown, VA 23692
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com